Richley v. Childs.

---

## Charles Richley, et al., v. Robert A. Childs.

### Gen. No. 11,138.

1. CHATTEL PROPERTY—*relative rights of claimants to.* A person purchasing chattel property from an administrator, who sold the same by virtue of authority of court, acquires a superior title to another who purchases such property at an unauthorized chattel mortgage sale made under a void chattel mortgage, notwithstanding the person so purchasing from the administrator leaves such chattel property with the person of such administrator as bailee.

2. CHATTEL MORTGAGE—*when, should be foreclosed.* Possession of mortgaged chattels must be taken by the mortgagee within a reasonable time after default, and a failure to do so destroys the lien of the mortgagee as against subsequent purchasers and attachment or judgment creditors. What is such a reasonable time is to be determined by the situation of the parties and the special circumstances of each case; but where both parties reside in the same county, within a few miles of each other, and three days are suffered to pass after default without any effort to take possession, the delay is unreasonable and the burden of proof is upon one claiming under such mortgage to establish a reduction to possession within the time required by law.

Action of replevin with count in trover. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1903. Affirmed. Opinion filed May 17, 1904.

ADOLPH MARKS, for appellants.

CHARLES HUDSON, for appellee.

MR. JUSTICE STEIN delivered the opinion of the court.

This was replevin with a count in trover brought by appellee against appellants for two horses, a truck and a harness. The horses and truck having been recovered on the writ, the jury found the right of possession thereto in appellee and assessed his damages at two hundred and fifty dollars. After a remittitur of the damages ordered by the court, judgment was rendered on the verdict and defendants appeal.

The property in controversy belonged to one Elizabeth Kane. She died October 27, 1893, and Luke Kane, her husband, was appointed administrator of her estate. As such he came into possession of the property and duly inventoried it as a part of the estate. On July 11, 1898, Luke Kane, still being administrator, but in his private capacity and without any authority from court, gave a chattel mortgage on the property to one W. C. Anderson to secure his note of even date for $101.40, payable to Anderson's order in five months. Kane was not indebted to Anderson, but to William McGivern, who had handed the claim to Anderson for collection. McGivern knew the property belonged to the estate and did not authorize Anderson to procure the chattel mortgage from Kane. In September, 1898, before the note was due, Anderson seized the horses, wagon and harness under pretense of the mortgage, and without the knowledge or authority of McGivern. Upon the latter's order Anderson restored the property to Kane.

December 16, 1898, under an order of the Probate Court giving Kane, as administrator of his wife's estate, leave to sell the personal property at private sale, the horses, wagon and harness, then in the actual possession of the administrator, were sold by him to appellee for $125.85 and a bill of sale executed therefor by Kane both personally and as administrator. Appellee claims under this bill of sale. On the day it was made he, through his agent, took possession of the property by placing his hand on the bridle of one of the horses, telling Kane at the same time that "we

couldn't take care of them." Kane drove off with the horses and they and the wagon and harness remained in his possession as alleged bailee for appellee until on or about December 23, 1898, nearly two weeks after the note secured by the mortgage had become due, when constable H. B. Goodrich, having physical possession of the mortgage, but so far as appears no authority either from Anderson or McGivern, sold the property at public sale to one D. C. Schnell; but for how much, or whether Schnell paid anything, or to whom, does not appear. Nor is there any proof as to who it was that seized the property out of Kane's possession as bailee or just when the seizure took place or how or from whom Goodrich came into possession of the mortgaged chattels. Shortly after the sale to him Schnell sold and delivered the same to appellants for $200, they having no actual notice of the claims of appellee or of the previous sale to him. Appellee then brought this replevin suit.

Appellants invoke the well-established rule of law in this state that an absolute sale of personal property where the possession is permitted to remain with the vendor is fraudulent *per se* and void as to subsequent creditors and purchasers, and claim that there was no real or actual transfer of possession from Kane to appellee, inasmuch as after the sale to the latter Kane was just as much and to the same extent in possession as before. If Kane had been the owner and as such had sold to appellee, and appellants had afterwards bought from Kane, he being in possession, it may well be and we are of opinion that appellants would have acquired the better title. But such are not the facts of this case. Kane never was the owner but had possession as administrator. After the sale to appellee he held the possession for him. Moreover, neither Schnell, from whom appellants bought, nor appellants themselves were induced to buy or part with their money (if Schnell parted with any at all) by reason of the possession or apparent ownership being in Kane. Schnell had no dealings with Kane. He bought at a public sale conducted by constable Goodrich.

How Goodrich came into possession is not shown. For all that appears the goods may have been stolen from Kane. At all events their taking from him was tortious. The mortgage under which appellants claim was void. It was made by Luke Kane individually upon property which did not belong to him, to secure his individual debt to McGivern, and McGivern knew that the property was not Kane's. Under these circumstances Kane, although generally speaking the legal title was in him in trust for the payment of the debts of his intestate (People v. Brooks, 123 Ill. 246; Makepeace v. Moore, 5 Gil. 474; Williams on Executors, 936, 937), was without authority to execute the mortgage. Any sale under it passed no title. The Probate Court had not authorized the administrator to dispose of the property under sections 90 and 91 of the Administration Act (Rev. Stat. ch. 3).

Possession of mortgaged chattels must be taken by the mortgagee within a reasonable time after default in payment or other conditions broken by which he becomes entitled to possession. A failure to take possession within such time destroys the lien of the mortgage as against subsequent purchasers and attachment or judgment creditors. To permit possession to be retained by the mortgagor while the right of possession is in the mortgagee, is a fraud upon creditors and purchasers and contrary to the policy of the law. Reed v. Eames, 19 Ill. 594; Cass v. Perkins, 23 Ill. 326; Shannon v. Wolf, 173 Ill. 253. What is a reasonable time to reduce mortgaged chattels to possession after default must be determined by the situation of the parties and the special circumstances of each case. Where the parties both reside in the same county within a few miles of each other, and three days are suffered to pass after default without any effort to take possession, the delay will be unreasonable as against the rights of third parties. Reed v. Eames, *supra;* Cass v. Perkins, *supra;* Wooley v. Fry, 30 Ill. 158. Here, the note secured by the mortgage fell due on December 11, 1898. Assuming that the mortgage was valid and that the seizure of the property was for

purposes of a foreclosure, it does not appear that it was taken out of the possession of the mortgagor until December 23, 1898. The burden of proof was upon appellants, who claimed under the mortgage, to show that the chattels covered thereby had been reduced to possession by the mortgagee in apt time after non-payment of the note when due. This they did not do. So far as appears all the parties lived in Chicago. No excuse was shown for not taking possession before the twenty-third of December. Under the law of this state possession should have been taken not later than the fourteenth and possibly on the twelfth or thirteenth. The failure to take possession avoided and discharged the lien of the mortgage as against appellee although he had purchased the chattels before the maturity of the secured note. Constant v. Matteson, 22 Ill. 558; Atkins v. Byrnes, 71 Ill. 326.

It is further argued that appellee is estopped from claiming title because he was aware of the existence of the mortgage and took no steps to have it released or discharged of record. Even if it be conceded that the mortgage was valid, appellee was under no legal or other obligation to procure its release, and indeed could not have done so if he had desired. He was a stranger to it.

The testimony concerning Anderson's seizure of the chattels before the maturity of the mortgage, the disavowal of his acts by McGivern and the return of the property to Kane on McGivern's order was in part received over the objection and exception of appellants, and they moved to strike it from the record, whereupon the court said: "It may stand, provided they connect the defendants with it." No connection was made, but the motion was not renewed. Had it been (as it should) it is to be presumed the court would have ordered the testimony stricken out. Besides, its admission, if erroneous, was harmless. It is not shown that it operated to the prejudice of appellants, and we do not see how it could.

A witness who was testifying as to the value of the harness was objected to as not competent, whereupon the court

remarked: "The jury can judge the facts without· testimony." In view of the remittitur of the entire sum allowed as damages, it is not perceived how appellants were prejudiced in the final judgment by the remark of the court.

Error is also assigned in connection with the giving, refusal and modification of instructions asked by the respective parties. We do not consider it necessary to pass directly upon the points made by counsel in this regard. As the evidence stood, there was bound to be a verdict for appellee. He showed himself to be the owner of the goods in controversy, and appellants offered no legal defense.

The judgment of the Circuit Court is affirmed.

*Affirmed.*