The Dayton Scale Company, Appellee, v. General Market House Company, Inc., Appellant.

Gen. No. 32,228.

Opinion filed March 29, 1928.

RALPH ROSEN, for appellant.

GOLDMAN & SEEDER, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an action brought by plaintiff against defendant for the value of certain scales and meat slicers sold under a conditional sales contract to Peter Golas, and which at the time of the institution of this suit were in the possession of the defendant.

The case was submitted by agreement to the trial judge without a jury, and on the proofs heard there was a finding in favor of the plaintiff for $510, and judgment thereon, after the overruling of motions for

a new trial and in arrest of judgment. Defendant brings the record here by appeal for our review.

The articles in suit, it is claimed by plaintiff, were sold part on September 25, 1924, and the remaining part on January 8, 1925. The contract between the parties, plaintiff and Golas, is what is known as a ''conditional sales contract.'' In said contract a clause in substance is found: That the equipment shall remain the property (naming the property) of plaintiff until the price or a judgment for same is paid in full.

When suit was commenced plaintiff claimed $950 of the purchase price remained due and unpaid. The two contracts were in the same general form: That of September 25, 1924, was for articles of an agreed price of $950, to be paid $50 in cash and the balance in 17 monthly payments of $30 each and one payment of $50, and that of January 8, 1925, was for articles totaling by agreement $1,290. Of this $1,290, $100 was paid in cash and the balance of $950 was to be paid in 15 monthly payments of $60 each and one payment of $50. All of the foregoing payments in both contracts were evidenced by Golas' instalment notes for the amounts above set forth. There were certain allowances made on both sales, which reduced the prices to be paid to the total amount hereinabove recited.

It is in evidence that Golas made six payments under the two contracts, but made default in his payments in April, 1925. In September, 1925, he began other payments, and the last payment which he made was in December, 1925; and Golas was importuned by plaintiff to make the balance of his payments, but that his excuse of being hard pressed for money was received and he was permitted to retain possession of the articles covered by the contracts.

Upon the trial defendant's counsel offered to prove that all of Golas' goods, equipment and fixtures, including the scales and meat slicers sold by plaintiff to Golas under the conditional sales contracts, were con-

veyed by Golas to one Morris Milstin on April 29, 1926, by chattel mortgage; that the chattel mortgage was recorded in the recorder's office of Cook county on the same day; that subsequently Milstin foreclosed the same and that all the goods, including those for which plaintiff sought to recover the value from defendant in this suit, were sold by the bailiff of the municipal court to one Shimelfarb; that Shimelfarb on November 8, 1926, sold them to one Levee, and that Levee on November 15, 1926, by bill of sale, conveyed the same property for a consideration of $7,500 to the defendant, General Market House Company. This offer of evidence upon objection made by plaintiff the court refused to receive. This action of the court was erroneous. The evidence should have been received, and as it was excluded upon the motion of plaintiff, and thereby the evidence on its procurement was not received, we are entitled to assume that defendant's counsel would have, but for the interference of plaintiff, made the proof which he offered to do. Plaintiff cannot be held in this court to object to our so doing, as the error is chargeable to its improper objection. The effect of the objection in law goes to the probative force of the evidence offered, and is tantamount to a contention that such evidence constituted no defense to the action. We will assume counsel for defendant, in making the offer, did so in good faith with the knowledge that he had witnesses at hand by whom to make such proof.

Defendant argues for reversal that it was a bona fide purchaser of the property in suit, and that the conduct of the plaintiff estops it from asserting title to such property, and that the court committed error in excluding evidence proffered by defendant, and that the court erred in not finding the issues for the defendant.

Plaintiff argues for affirmance that the analogy between the conditional sales contract and a chattel mortgage is far fetched, and that the cases cited by de-

fendant are therefore not in point. To this contention we are not prepared to accord our assent. We think there is a forceful analogy between them, as will appear from the authorities hereinafter cited.

It is patent that the Uniform Sales Act is in contravention of the common law, and that under well-settled rules must be strictly construed against those seeking relief under it. No presumptions are to be indulged *de hors* the proofs. Section 20 of the Uniform Sales Act, R. S. 1927, Cahill's St. ch. 121a, ¶ 23, provides:

"Where there is a contract to sell specific goods * * * the seller may, by the terms of the contract, * * * reserve the right of possession or property in the goods until certain conditions have been fulfilled."

And by section 23, Cahill's St. ch. 121a, ¶ 26, *supra*, it is provided:

"Where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."

And this is where the analogy between the Uniform Sales Act contract and that of a chattel mortgage security is apparent.

It was held in *Bower v. Popp,* 241 Ill. App. 568:

"The law of Illinois has always been that, if the mortgagee in a chattel mortgage neglects to reduce the property to possession upon the default of the mortgagor, or within a reasonable time thereafter to be determined by the circumstances of the parties, he loses his lien as against the rights of third persons, and that, as affecting the interests and liens of the latter, the mortgage becomes a void instrument."

In *Drain v. La Grange State Bank,* 303 Ill. 330, it was held:

"If a vendor of a chattel delivers it to a vendee or

allows him to have possession of the chattel before payment of the purchase price and to have all the indicia of ownership, retaining, however, a secret lien for payment, he cannot assert his right against a judgment creditor of the vendee without notice before a levy is made. An innocent purchaser will be protected, without regard to the terms of the contract of sale, where the appearance of ownership is in one while the title is really in another or there is a secret lien.''

*Lyon & Healy v. Walldren*, 201 Ill. App. 609, involved the title to a piano, in which plaintiff proved that the piano taken in the replevin writ had been sold by it to a Mrs. Butterfield, who paid on account of the purchase price five dollars and for the balance gave a conditional sale note payable in instalments, which provided that when all the payments were made the piano should be the property of Mrs. Butterfield, and until then the title of the piano should remain in plaintiff. As between the parties the contract was binding. However, the evidence showed that defendant bought the piano from a third party named Kerber, but failed to charge the defendant with knowledge, either actual or constructive, of the contract existing between plaintiff and Mrs. Butterfield, or that Mrs. Butterfield ever claimed to have owned the piano, and there were no facts or circumstances from which either in fact or law he could be deemed to be charged with knowledge that plaintiff had sold the piano conditionally to Mrs. Butterfield or anyone else, and that the possession of the piano in Kerber was prima facie evidence of his ownership, and that defendant having bought the same from Kerber without any knowledge of the rights or claims of plaintiff, took it free from any such claims, and the court said:

''A transaction similar to the instant case both on fact and legal principles was held in *Harkness v. Russell*, 118 U. S. 663, to bind a third party who had knowledge of the terms of the conditional sale and of the

rights of the seller thereunder. Many cases from the English and other courts are cited in the opinion in the *Russell* case, *supra,* which hold to the effect that the vendee in a conditional sale takes no title until the conditions of the sale are performed, and can consequently convey no title to a third party even though such third party have no knowledge of the condition attached to such vendee's possession. These cases are not only clear *obiter dicta,* as the question of the rights of an innocent purchaser was not involved in or necessary to the decision of the *Russell* case, *supra,* but such decisions are contrary to the trend of the rulings of our own courts and of the public policy which such rulings establish in this State.

''The doctrine controlling conditional sales is clearly stated in *Gilbert v. National Cash Register Co.,* 176 Ill. 288, where the court say: 'In Illinois ''if a person agrees to sell to another a chattel on condition that the price should be paid within a certain time, retaining the title in himself in the meantime, and delivers the chattel to the vendee so as to clothe him with an apparent ownership, a bona fide purchaser or execution creditor of the latter is entitled to protection as against the claim of the original vendor,'' ' citing cases, and continuing say: 'Whatever may be the rule in other jurisdictions, it is well settled in this State that the owner of personal property will not be permitted to sell it, either absolutely or conditionally, and still continue in possession of it. The party in possession of personal property is presumed to be the owner of it, possession being one of the strongest evidences of title to personal property. ''To suffer, without notice to the world, the real ownership to be in one person and the ostensible ownership in another, gives a false credit to the latter and in this way works an injury to third persons.'' ' ''

The plaintiff in this suit, instead of adhering to the terms of the so-called conditional sales contract, per-

mitted Golas to retain possession long after default in the payment of instalments according to the terms of the sale, and gave him an opportunity, of which he availed, to mortgage the property, and allowed the mortgage to be foreclosed and the title under the sale under such foreclosure to vest in a third party, and the title thus obtained by such third party to be conveyed to the defendant in this action. Under these circumstances possession of the defendant is prima facie evidence of ownership, and could not, so far as plaintiff is concerned, be rebutted. It was the plaintiff's own conduct which allowed Golas to deal with the property as his own and the title thereto ultimately to be vested in the defendant without notice, express or implied, of plaintiff's rights under the so-called conditional sales contracts.

In *Albert Pick & Co. v. Spoor,* 212 Ill. App. 612, 613, the court said, *inter alia:*

"It has long been the law of this State that possession of the mortgaged chattels must be taken by the mortgagee within a reasonable time after default in payment or other condition broken by the mortgagor; that failure to take such possession is a fraud *per se* as to third parties, not subject to explanation. This rule is based upon the principle that a conveyance of personal property where possession is permitted to remain in the vendor, as in the instant case, is fraudulent *per se* and void as to creditors and purchasers, unless the retaining of possession is consistent with the mortgage. * * * (*Richley v. Childs,* 114 Ill. App. 173.) In that case it was held that failure to take possession for three days after default was unreasonable. Counsel for both sides concede this to be the law. * * * The instant case is not between the mortgagor and mortgagee of chattels, but between the mortgagee and a third party, and the statute says that the mortgage shall be good as against him until the maturity of the debt.''

As the plaintiff by its own conduct lost title to the property involved in this suit and the defendant being an innocent purchaser of the same without either notice or knowledge in any manner of the alleged claim of title by the plaintiff, it is not entitled to recover in this suit. This is in no way in conflict with *Sherer-Gillett Co. v. Long,* 318 Ill. 432—because this case comes within the exception stated that "unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell." The plaintiff in this case was so precluded from the facts above recited.

As the jury was waived and a trial had before the court by agreement of the parties, we will do here what the trial judge should have done, and reverse the judgment of the municipal court and enter a finding and judgment here for defendant.

*Judgment reversed and judgment here for defendant.*

TAYLOR, P. J., and WILSON, J., concur.