American Type Founders Company, Appellee, v. Metropolitan Credit and Discount Corporation, Appellant.

**Gen. No. 36,432.**

Opinion filed June 30, 1933.   Rehearing denied July 11, 1933.

LUSTER & LUSTER, for appellant; JULIAN J. LUSTER of counsel.

VOSE & LIND, for appellee; FREDERICK A. LIND and JOHN D. CLANCY, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

On April 11, 1932, plaintiff commenced a 4th class action in replevin to recover the possession of certain printers' machines, equipment and supplies of the stated value of $500, which it was alleged defendant had wrongfully taken and wrongfully detained. When the bailiff under the writ was about to take the property and deliver it to plaintiff, defendant, on April 27, 1932, gave a forthcoming bond under the statute in the sum of $1,000. Upon a trial without a jury on September 30, 1932, the court found that "the right to the possession of the property replevied is in plaintiff" and assessed plaintiff's damages for the wrongful detention of the property at one cent. Judgment was entered upon the finding against defendant and the present appeal followed.

The following facts in substance appear from the evidence:

Plaintiff, hereinafter called the Founders company, is a manufacturer and seller of printers' equipment and supplies, having a plant and doing business at Chicago. H. M. Van Hoesen Corporation, hereinafter called the Van Hoesen company, is engaged in the printing business at Chicago, producing advertising material for its customers. Defendant, hereinafter called the Credit company, is engaged in the business

of loaning money on notes, secured by chattel mortgages, etc. On October 15, 1929, the Founders company agreed to sell to the Van Hoesen company the property herein involved, subject to the terms and conditions of a certain "conditional sale contract" then executed. In the contract the Van Hoesen company agreed to pay to the Founders company the total sum of $1,190.33, of which amount $290.33 should be paid upon delivery of the property. It was further agreed that the Van Hoesen company, for the deferred payments, should execute and deliver its 18 notes of $50 each, payable monthly—the first on November 15, 1929, and the last on April 15, 1931. The Van Hoesen company made the payment of $290.33 and executed and delivered the notes, and the property was delivered to it at its plant in Chicago. It was further provided in the contract that "until the *whole* amount, as above set forth, has been paid, the ownership of said property shall be and is to remain" with the Founders company; that in the event of the Van Hoesen company "failing to make any or all of the payments at the times and in the manner indicated," the Founders company "*may* take immediate possession of the property wherever found and sell same at public or private sale, or as much thereof as shall be sufficient to pay the amount due or to become due, with all costs pertaining to the taking, keeping, advertising and selling of said property"; and that "any extension of time to make any of the payments herein stated shall not of itself be construed as a waiver of any of the provisions of this agreement." The contract was not recorded.

The Van Hoesen company was somewhat backward in making some of the deferred payments as they fell due. In the latter part of the year 1930 and extending into the year 1931 it became financially embarrassed and its affairs were taken over temporarily by the Chicago Association of Credit Men. All of the notes

maturing prior to January 15, 1931, were ultimately paid to the Founders company, either by the Van Hoesen company or by said association, but four of the notes, aggregating $200, and due respectively on January 15, February 15, March 15 and April 15, 1931, were not paid. After April 15, 1931, the Van Hoesen company continued to operate its business, but the Founders company, notwithstanding the balance of the indebtedness owing to it had fully matured, did not take the property from the possession of the Van Hoesen company.

During November, 1931, Harold W. Van Hoesen, president of the Van Hoesen company, had negotiations with George J. Bloom, an officer of the Credit company, looking to the former company obtaining a loan from the latter, to be secured by a chattel mortgage upon practically all of the chattels in the Van Hoesen company's plant, including the property herein involved. After the Credit company had caused an inspection to be made of the property, it agreed to make a loan to the Van Hoesen company of $3,750, to be evidenced by notes and secured by a chattel mortgage on the property. On November 23, 1931, the loan was made and the notes and mortgage were executed and delivered. The mortgage was recorded on the following day. The Founders company had no actual notice of the above negotiations or of the making of the mortgage. It is in the usual form, and by it the Van Hoesen company, in consideration of $3,750, sold and conveyed to the Credit company, as security, all of the property (describing it) in the Van Hoesen plant, including the property herein involved. The notes were 12 in number and payable to bearer. Those numbered 1 to 11, inclusive, were for $125 each, payable at monthly intervals. Note No. 12 was for $2,375, payable in 12 months, viz., on November 23, 1932. On the day of the delivery of the notes and mortgage, Harold W. Van Hoesen and another officer signed and

delivered to the Credit company an affidavit, stating that the Van Hoesen company "is the owner of *all* machinery and equipment listed in chattel mortgage of even date," that "there are no other chattel mortgages or liens on this property," that no part thereof "has been sold to this corporation subject to any conditional sale agreement," and that affiants make the affidavit "for the purpose of inducing" the Credit company "to make the above mentioned mortgage on the above manufacturing and printing plant." As to the particular property, mentioned in the conditional sale contract, the affidavit was false.

After the giving of the mortgage the Van Hoesen company continued to conduct business at its plant. The chattel mortgage notes, Nos. 1, 2 and 3, were paid, but note No. 4, maturing March 23, 1932, was not paid, and on April 5, 1932, the Credit company, under the provisions of the mortgage, elected to declare and did declare the entire unpaid balance of $3,375 immediately due and payable, put its custodian in possession of the plant and posted notices that a foreclosure sale would there be held on Saturday morning, April 9, 1932. The sale was had and all of the property, including the property herein involved, was sold for $3,075, to an agent of the Credit company, he being the only bidder, and the Credit company took possession of all of the property. On the next business day (April 11), and while all of the property still remained on the premises of the Van Hoesen company, the Founders company commenced the present action in replevin, and on April 27, 1932, the Credit company gave its forthcoming bond to the bailiff, as first above mentioned.

In the meantime, as disclosed by uncontradicted testimony, the Founders company, late in March, 1932, for the first time received notice that the chattel mortgage had been given and that it covered the property

herein involved as well as other property. On March 31, a representative of the Founders company went to the Van Hoesen plant with a truck and men for the purpose of taking away the property mentioned in the conditional sale contract, but was persuaded from so doing by the statement of Harold W. Van Hoesen that arrangements were being made with the Credit company for an additional loan, and that by Monday, April 4, the balance due on the conditional sale contract would be paid. On April 4, and again on April 6, William H. Holtz, credit manager of the Founders company, interviewed representatives of the Credit company, informed them of Van Hoesen's said statements, and showed them the conditional sale contract, but on each occasion Holtz was told that the contract was "no good," for the reason that all the deferred payments mentioned therein were "past due," and that the Credit company was going to foreclose the chattel mortgage on *all* the property covered by it in the Van Hoesen plant. On Saturday, April 9, Holtz attended the foreclosure sale and objected to the selling of the particular property mentioned in the contract, on the ground that the Founders company was the owner thereof, but no attention was paid to Holtz's objections and the foreclosure sale was made of *all* the property.

The main points here urged by counsel for the Credit company, as grounds for the reversal of the judgment appealed from, are: (1) that under the provisions of section 23 of the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 26, the Founders company (plaintiff) "is by its conduct precluded from asserting its title reserved under the conditional sale contract as against the Credit company" (defendant), and (2) that "the law will not permit conditional sale contract holders, who do not re-possess the property within a reasonable time after default in the payments, to assert their

secret liens against innocent third persons.'' The present record discloses that counsel made substantially the same points in a colloquy between him and the trial judge, which ensued after the judge had indicated that he would enter a finding in favor of plaintiff and had stated his reasons therefor, which colloquy is in part as follows:

''Mr. Luster (attorney for the Credit company): Let me make one suggestion. . . . This property was conveyed to us in November, 1931, the time we took possession of it (April 5, 1932) is not the governing time. It is when we gave our good money, taking the property as security.

''The court: You did not give your money on the strength of any representation made by the Founders company?

''Mr. Luster: No, but we did give our money based on the *representation* (?) that, because of the Founders company not repossessing their stuff within a reasonable time after (the maturity of) the conditional sale contract, this man (Van Hoesen) was put into the position of defrauding us. If the Founders company had repossessed their property we would not have been placed in the position we are. . . . The law is, if the owner of the property does *nothing,* that is, if he does not repossess himself of the property, he does *something* to let the other fellow hoodwink us.

''The court: No. . . . You apparently haven't gotten the force of my former statements. . . . I want to make a further statement for the record, viz., that there is no evidence in the record that the defendant corporation (Credit company) in making the chattel mortgage loan relied in any way upon any representation made by the Founders company.''

The provisions of subsection 1 of section 20, and of subsection 1 of section 23 of the Uniform Sales Act, in force in Illinois since July 1, 1915, Cahill's St. ch. 121a, ¶¶ 23, 26, are as follows (italics ours):

"Sec. 20 (1)   Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled.   The right of possession or property may be thus reserved *notwithstanding the delivery of the goods to the buyer* or to the carrier or other bailee for the purpose of transmission to the buyer."

"Sec. 23 (1)   Subject to the provisions of this Act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, *unless* the owner of the goods *is by his conduct precluded from denying the seller's authority to sell.*"

Since the passage of the Uniform Sales Act, the leading case in Illinois concerning conditional sale contracts (decided in October, 1925, and affirming the judgment of the second division of the Appellate Court for the first district in 236 Ill. App. 162) is *Sherer-Gillett Co. v. Long,* 318 Ill. 432.   In that case it appears that on April 3, 1924, the plaintiff (Sherer-Gillett company) entered into a contract of conditional sale with one Taylor for the sale of a display counter to be used by him in his grocery store; that the contract provided that Taylor was to pay to plaintiff for the counter $10 in cash and $10 each month until the agreed purchase price was paid, and the title to the counter was to remain in plaintiff until the full payment of the purchase price had been made; that after the counter had been placed in Taylor's store, but before the maturity of the entire purchase price, he sold the counter to defendant (Long) for $100, who then had no notice of the reservation of the title in plaintiff and no notice of any rights of plaintiff by virtue of the conditional sale contract; that after defendant had

removed the counter from Taylor's store, and Taylor had ceased making payments on said contract, plaintiff replevied the counter; that on the trial of the replevin suit there was a finding and judgment in favor of defendant (Long); that the Appellate Court reversed that judgment and entered a judgment finding the right of property in plaintiff (Sherer-Gillett company) and assessing its damages at one cent; and that the Supreme Court, on appeal and the granting of a certificate of importance, affirmed the judgment of the Appellate Court. In the opinion of the Supreme Court it is said (pp. 433, 434):

"Before sales became a subject of uniform legislation it was settled by an overwhelming weight of authority that the seller is not estopped by his conduct in delivering the possession of goods to the buyer upon a contract of conditional sale from asserting his title against one who purchases from the buyer, relying upon the apparent title of the latter (citing 1 Williston on Sales, 2d ed., sec. 324; *Harkness v. Russell & Co.,* 118 U. S. 663); but in this State we had held that a delivery of personal property to the purchaser upon a contract of conditional sale, with a retention of title in the seller, amounts to a constructive fraud, which postpones the right of the real owner in favor of those who have dealt without notice with the conditional vendee, who has been given the indicia of ownership. (*Gilbert v. National Cash Register Co.,* 176 Ill. 288; *Brundage v. Camp,* 21 id. 329.) Uniformity in the law of the several States pertaining to sales being deemed essential to the commercial welfare of the country, leaders of the American bar prepared and submitted to the legislatures of the several States a uniform sales act and a uniform conditional sales act. The former was adopted in this State in 1915 and is the law today."

After stating that by section 20 of the act "the validity of a contract of conditional sale is recognized,"

and after setting forth the provisions of subsection 1 of said section 23, our Supreme Court further said (pp. 434, 435, italics ours):

"It is a general, well-established principle that no one can transfer a better title than he has. (*Drain v. LaGrange State Bank*, 303 Ill. 330, 335; *Williams v. Merle*, 11 Wend. 80.) . . . Section 23 declares, in harmony with the settled law *of estoppel,* that the owner of the goods may by his conduct be precluded from denying the seller's authority to sell. In order to give rise to an estoppel, however, *it is essential* that the party estopped shall have made *by act or word a representation,* and that the person setting up the estoppel shall have acted *on the faith of this representation* in such a way that he cannot without damage withdraw from the transaction. (1 Williston on Sales, 2d ed., sec. 312.) What representation has appellee (Sherer-Gillett Co.) made upon which appellant (Long) has relied to his damage? What conduct of appellee precludes it from denying the seller's (Taylor's) authority to sell. It did not clothe Taylor with indicia of title. Clothing another person with indicia of ownership does not mean simply giving him *possession* of a chattel. Possession is one of the indications of title, but possession may be delivered by the owner to a lessee, a bailee, an agent or a servant. Owners of chattels must frequently entrust others with their possession, and the affairs of men could not be conducted unless they could do so with safety, so long as the possession of the chattel is not accompanied by some indicium of ownership or the right to sell. (*Drain v. La Grange State Bank, supra,* p. 336.) Whether the legislature should adopt the companion act, which provides for the recording of contracts of conditional sale, is not for this court to decide. The Uniform Sales Act recognizes the validity of such contracts and specifically provides that no title can be passed by the purchaser of goods under such a con-

tract 'unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.' There is no basis for the operation of an estoppel in this record.''

In the present case it appears that the last four notes of $50 each, mentioned in the conditional sale contract, were not paid at the respective maturities to the Founders company; that the entire indebtedness matured on April 15, 1931; that thereafter the Founders company did not retake possession of the particular property mentioned in the contract but allowed it to remain in the Van Hoesen plant; that on November 23, 1931, without the knowledge or consent of the Founders company, the Van Hoesen company, as security for a loan of $3,750, executed the chattel mortgage on the particular property (which it did not own), as well as on a large amount of other property (which it did own), to the Credit company; that early in April, 1932, a matured chattel mortgage note not having been paid, the Credit company started proceedings to foreclose the mortgage; that then for the first time the Founders company learned of the existence of the mortgage; that its representative (Holtz), being present at the foreclosure sale, objected to any sale of the particular property, claiming that the Founders company was the owner of it; that notwithstanding the objections, the particular property, together with the other property, was sold at the foreclosure sale on Saturday, April 9, 1932; and that on the next business day (April 11) the Founders company commenced the present replevin suit. It further appears that on the trial it was not claimed by the Credit company that, when it made its chattel mortgage loan to the Van Hoesen company, it did so on the faith of any representation, either by act or word, of the Founders company. The only claim then made (also urged on this appeal) was in substance that, because the Founders

company, after the Van Hoesen company had default-
ed in some of the last of the deferred payments men-
tioned in the conditional sale contract, did not repos-
sess itself, or make any attempts so to do, of the par-
ticular property within a reasonable time after the
maturity of the entire indebtedness (April 15, 1931),
the Founders company, under the above quoted provi-
sions of said section 23 of the Uniform Sales Act, was
estopped from successfully maintaining this replevin
action.

In our opinion, and as said in the *Sherer-Gillett*
case, *supra,* "there is no basis for the operation of an
estoppel in this record." In *Dodd v. Rotterman,* 330
Ill. 362, 371, 372, it is said: "Estoppel must be based
upon some statement or conduct of the person claimed
to be estopped by which the person claiming the estop-
pel has been misled or induced to do something which
he would not have done but for the statement or con-
duct of the other and by which he has been damaged."
And we think, under the evidence, the quoted provi-
sions of the Uniform Sales Act, and the decision and
holdings of our Supreme Court in the *Sherer-Gillett*
case, *supra,* that the municipal court was amply jus-
tified in making the finding and in entering the judg-
ment appealed from.

Counsel for the Credit company rely upon the hold-
ings and decision in *Dayton Scale Co. v. General Mar-
ket House Co.,* 248 Ill. App. 279, decided by the third
division of the Appellate Court for this district in
March, 1928, but the judgment of the Appellate Court
in that case was reversed and the cause remanded by
the Supreme Court in 335 Ill. 342, for reasons stated
in the opinion of the Supreme Court at page 345. In
December, 1930, the same division of the Appellate
Court for this district decided the case of *Silverthorne
v. Chapman,* 259 Ill. App. 289, which is somewhat sim-
ilar in its facts to those of the present case. It ap-

pears that in September, 1927, Silverthorne had sold to one Bousquet an automobile under a conditional sale contract which provided that "title to the car and extra equipment shall not pass by delivery to the buyer, but shall remain vested in and be the property of the seller or assigns, until the purchase price has been fully paid." The purchase price was stated in the contract to be $1,125, and was evidenced by Bousquet's judgment note in that sum, payable to Silverthorne "in installments of $50 on the 29th day of each succeeding month." After paying some of the installments Bousquet did not make payments on numerous subsequent installments as they fell due, but Silverthorne did not take the possession of the car away from Bousquet. While Bousquet's defaults continued, but just *before* his last stipulated payment under the contract had become due and payable to Silverthorne, Chapman, who had obtained a judgment in the superior court of Cook county against Bousquet, caused the car to be seized while in Bousquet's possession on June 6, 1929, under an execution on said judgment. Shortly thereafter, and upon a trial of the right of property, the county court of Cook county found the right of property of the car in Silverthorne and entered judgment accordingly, from which judgment Chapman appealed. In the county court, as well as upon appeal, Chapman, relying upon the provisions of section 23 of the Uniform Sales Act, contended that "the conduct of Silverthorne, in allowing Bousquet to *retain possession* of the car *long after he had defaulted in his payments* under the contract without exercising any of the rights given to the vendor under the agreement, and thus clothing him with the indicia of ownership, amounted to an estoppel within the meaning of section 23, and that as a result thereof Silverthorne should be precluded from denying Chapman's paramount right." The Appellate Court af-

firmed the judgment of the county court, and in its opinion, after mentioning one of the holdings of our Supreme Court in the *Sherer-Gillett* case, *supra,* said in part (p. 292): "It appears from this record that Chapman in no way relied upon the ownership of the car by Bousquet in extending credit to him, and that Silverthorne neither said nor did anything which might be construed to constitute an estoppel. Therefore section 23 is clearly not applicable to the facts in this case."·

Since the present case was tried, the Appellate Court for the third district, on January 16, 1933, decided the case of *Haines v. Doss,* 269 Ill. App. 179, to which decision counsel for the Credit company call our attention in their reply brief. Without mentioning the decision or holdings of our Supreme Court in the *Sherer-Gillett* case, *supra,* but distinguishing the *Silverthorne v. Chapman* case, *supra,* it is decided in the *Haines* case, in substance: (1) that a vendor should assert his rights under a conditional sale contract within a reasonable time after the expiration of the time of final payment thereunder, and (2) that a conditional vendor of an automobile is estopped to assert his rights as against an execution creditor of the conditional vendee where the time for final payment under the contract was 10 months before the levy of execution, and the conditional vendor failed to assert his rights for such period of time. However correctly that case may have been decided, its facts, as we read the opinion, are different from those in the present case, and the issue in that case was not, as in the present case, whether the evidence sufficiently warranted an estoppel *under the provisions of section 23* of the Uniform Sales Act.

As bearing upon the contentions of counsel for the Credit company in the present case, the decision and holdings of the United States Court of Appeals for

the Seventh Circuit, in the case of *In re Steiners Improved Dye Works (McKey, Receiver v. Troy Laundry Machinery Co.)*, 44 F. (2d) 557, may be referred to. It was there decided in substance that the conditional seller's failure to repossess chattels for over eight months after the last payment became due did not create an estoppel, under the Illinois Uniform Sales Act, in favor of the receiver in bankruptcy of the estate of the conditional buyer. It appears that in the bankruptcy court a reclamation petition, filed by the conditional seller (Troy Laundry Machinery Company), for the return to it of certain machinery was allowed, that from the order of allowance the receiver appealed and that the Court of Appeals affirmed the order. The court said, in part (p. 559):

"The contract here was to sell specific goods, and the Illinois statute provides that the seller may, by the terms of the contract, reserve the right of possession or property in the goods until certain conditions have been fulfilled, and may do that notwithstanding the delivery of the goods to the buyer. It was specifically agreed in the contract: (a) That bankrupt would pay $4,930; (b) that the title to the property should remain in appellee until fully paid for in cash; (c) that notes would be given by the buyer; (d) that the giving of the notes should not affect the title reserved by appellee; (e) that collection of the notes after default should not be considered as a waiver, or in any manner or form affect the title of appellee or its right thereafter to reclaim said chattel.

"There is no statute of limitation, touching the time during which the possession and right of property may be retained by the seller, nor is there any limitation as to the time within which the seller must retake the property in case of default. There is nothing in the statute to indicate that the seller, under such a contract, is subject to any limitation other than the general statute of limitations applicable to written contracts.

We see no reason, if the purchase price is not fully paid, why the seller may not act at any time within the period of limitations unless he is estopped. An estoppel is based upon a wrong. (*Sherer-Gillett Co. v. Long,* 318 Ill. 432; *Commercial Bank v. Canal Bank,* 239 U. S. 520.) It is not here insisted that anybody was injured by any act or failure to act on the part of appellee. The failure of appellee to take possession upon default did not induce any one to pursue a course of action to his hurt."

For the reasons indicated, the judgment of the municipal court of September 30, 1932, appealed from, is affirmed.

*Affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.