(No. 14601.—Judgment affirmed.)
RALPH A. DRAIN, Appellee, *vs.* THE LaGRANGE STATE BANK, Appellant.

*Opinion filed June 21, 1922.*

1. SALES—*title cannot be transferred except by owner.* No one can transfer a better title than he has and no person can by his sale transfer to another the right of ownership in a thing in which he has not the right of property, except in the case of cash, bank bills, checks and notes payable to bearer or transferable by delivery in the ordinary course of business to a person taking the same *bona fide* and paying value for it.

2. SAME—*when real owner is estopped to assert his title against innocent purchaser.* Where the true owner of property allows another to appear as the owner of or to have full power of disposition over the property, so that an innocent third person is led into dealing with the apparent owner, an estoppel may operate against the true owner which will preclude him from disputing the existence of a title which he has caused or allowed to appear to be vested in another.

3. SAME—*when an innocent purchaser will be protected against vendor's lien.* Without regard to the terms of a contract of sale, an innocent purchaser will be protected where the appearance of ownership is in one while the title is really in another, and if a vendor delivers a chattel to the vendee before payment of the pur-

chase price and allows the vendee to have all the indicia of ownership, retaining a secret lien for payment, he cannot assert his right against a judgment creditor of the vendee without notice before a levy is made.

4. SAME—*mere possession of personal property does not enable possessor to give good title.* Possession of a chattel is but one of the indications of title, as possession may be delivered by the owner to a bailee, an agent or a servant, and one having possession of a chattel he does not own is not thereby enabled to give a good title so long as his possession is not accompanied with some indicium of ownership or the right to sell.

5. SAME—*contract of sale may be canceled by mutual agreement.* As between the parties to a contract of sale the party attempting to rescind must rescind *in toto* and return what he has received, but the parties by mutual agreement may cancel the contract and absolve themselves from its obligations upon such terms as they choose.

6. SAME—*when failure to return worthless check does not show that contract of sale was not rescinded.* If the seller of an automobile, upon finding that the check given to him as the first payment is worthless, declares the deal off, and the purchaser thereafter wrongfully takes possession of the car, which is later attached by his judgment creditor, the fact that the seller did not return the worthless check to the purchaser, who did not ask for its return, does not show that the contract of sale was not rescinded nor give rise to an estoppel against the vendor to assert title as against the attaching creditor.

7. SAME—*when judgment creditor of vendee cannot defend as an innocent purchaser for value.* Where the vendee, after a contract of sale is rescinded, wrongfully takes possession of the property and his judgment creditor levies an execution upon it, in a suit by the vendor for the conversion of the property the judgment creditor cannot defend as an innocent purchaser for value, where the vendor is not estopped from asserting his title.

8. SAME—*instructions stating abstract propositions not applicable to the evidence should not be given.* Instructions stating abstract propositions and which give no attention to the questions raised by the evidence and involved in the case should not be given.

9. SAME—*measure of damages is the fair market value of the property—instruction.* In an action of trover for the conversion of an antomobile the measure of damages is the fair market value of the car; but an instruction advising the jury that the damages are measured by the retail market value of the property cannot amount to prejudicial error, as a motor vehicle is not the subject of wholesale and retail trade.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. HARRY C. MORAN, Judge, presiding.

JESSE E. ROBERTS, (ROBERTS & SWAIN, of counsel,) for appellant.

KNAPP & CAMPBELL, (JOHN R. NICHOLSON, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Upon a trial in the county court of Cook county of this action of trover brought by the appellee, Ralph A. Drain, against the appellant, the LaGrange State Bank, for the conversion of an automobile, there was a verdict finding the defendant guilty and assessing the plaintiff's damages at $1000. Judgment was entered on the verdict, and on appeal to the Appellate Court for the First District the judgment was affirmed. A certificate of importance was made and an appeal to this court allowed.

The facts which the evidence for the plaintiff tended to prove and which have been finally determined by the judgment of affirmance by the Appellate Court are as follows: The plaintiff, Ralph A. Drain, was the owner of a Moline-Knight automobile and lived at Monmouth, Illinois. He was expecting to enter the military service of the United States, and desiring to sell the automobile he drove it to Chicago and delivered it to the Schillo Motor Car Company at its place of business on South Michigan avenue. Ed. Schillo received the car but did not succeed in selling it and sent it to the garage of his father, Adam Schillo, on West North avenue. Soon afterward, on January 26, 1918, the plaintiff met Arthur J. Smith and told him that

he had a car for sale.  The plaintiff, Smith and Anton Benson went to Adam Schillo's garage, where Smith examined the car and agreed to buy it for $1000, and to pay for it $100 cash and $100 a week until it was paid for.  The car was to remain at the garage until paid for, but the plaintiff told Schillo to let Smith have the car when he called for it.  The plaintiff and Smith came down-town to the Brevoort Hotel, and Smith gave plaintiff his check for $100 drawn on the LaGrange State Bank, the defendant, as a cash payment.  Plaintiff deposited the check in the bank at Monmouth and it was presented and payment refused, and it was protested for non-payment on January 31, 1918, and returned to the bank at Monmouth.  Plaintiff came back to Chicago in the early part of February and called Smith to the Brevoort Hotel, showed him the check and asked him what it meant.  He told Smith if he could not make the first payment they should call the deal off, to which Smith assented.  Plaintiff then called Ed. Schillo to come down to the hotel, where he showed him the check and told him it had been protested; that the deal was off and he was to notify his father, Adam Schillo, that the car was not to go out of that garage unless on a written order from him.  This was about the first week in February, according to the recollection of Ed. Schillo, who testified that he gave his father notice as directed.  At the time the deal was called off and the sale canceled Smith had not taken possession of the car, but he afterward took possession and took it away from the garage.  Adam Schillo testified that his son told him over the telephone not to deliver the car to Smith, but at the time his son told him, Smith had taken it away.  The time when the car was taken from the Schillo garage is not certainly fixed, but the first account of it after it was taken is when Smith, on February 19, drove it to the Keck garage at LaGrange and left it there.  The plaintiff was informed that Smith had gone to the Schillo garage and taken the car, and he came to Chicago,

as he thought, about the middle of February. He asked Smith what he meant by going out and taking the car and told him to get it back immediately. Smith offered as an excuse that he was drunk when he took the car and that he expected to bring it back, and said that he would. Almost immediately after this talk with Smith the plaintiff went to Washington to report for duty in the military service and knew nothing more about the car until the last of April, 1918. On April 3, 1918, the defendant obtained a judgment against Arthur J. and Grace M. Smith upon a promissory note dated October 11, 1917. The next day an execution was issued on the judgment, and it was levied upon the car in Keck's garage in LaGrange. The sheriff advertised it for sale to be held on April 15, 1918. The day before the sale was to take place Smith telephoned Benson, who had been interested in the real estate business with the plaintiff, that the car was advertised for sale,—that they were going to levy on it and sell it. The next morning, before the time for the sale, Benson notified the president of the defendant that the car they were about to sell did not belong to Smith but to the plaintiff, and the president answered that he would not bother about it. Benson then called up Keck, at whose garage the car was to be sold, and told Keck the same thing, and then went to Swain, the defendant's attorney, and gave him the same information. The sale was postponed to April 25, 1918, when the car was sold for $400, and the plaintiff being informed of the fact, on April 30, 1918, telegraphed the bank from Union Hill, New Jersey, where he was in the service, as follows: "Understand you have sold Moline-Knight thinking it belonged to A. J. Smith; you're absolutely wrong; I will hold you liable for all damages." This was before the proceeds of the sale had been paid to the defendant or the execution satisfied.

The question whether the judgment creditor levying an execution on property occupies the position of a *bona fide*

purchaser for value and whether there is a distinction in that respect between an attaching creditor and a judgment creditor is the subject of argument by counsel, but the question is of no importance in this case, since a *bona fide* purchaser for value from Smith would not have acquired any title to the car. Whatever the legal status of a judgment creditor may be, the levy of the execution upon the car gave to the defendant a lien to the extent, and only to the extent, of the ownership of Smith. It is a general, well established principle that no one can transfer a better title than he has. No person can by his sale transfer to another the right of ownership in a thing in which he has not the right of property, except in the case of cash, bank bills, checks and notes payable to bearer or transferable by delivery in the ordinary course of business to a person taking the same *bona fide* and paying value for it. (*Fawcett* v. *Osborn,* 32 Ill. 411; *Burton* v. *Curyea,* 40 id. 320; *Gibbs* v. *Jones,* 46 id. 319.) The purchaser of property wrongfully taken by his vendor from the true owner can obtain no more perfect title to the property purchased than the vendor himself possessed, and an innocent purchaser without notice of a wrongful taking can acquire no better title to property than his vendor had. (24 R. C. L. 374.) While that is true, an estoppel may operate against the person claiming what would otherwise be the better title, and this is based upon conduct of the true owner by which he allows another to appear as the owner of or having full power of disposition over property, so that an innocent third person is led into dealing with an apparent owner. The estoppel does not depend upon where the actual title is, but rests upon the act of the real owner, which precludes him from disputing the existence of a title which he has caused or allowed to appear to be vested in another. If a vendor of a chattel delivers it to a vendee or allows him to have possession of the chattel before payment of the purchase price and to have all the indicia of ownership, retaining, how-

ever, a secret lien for payment, he cannot assert his right against a judgment creditor of the vendee without notice before a levy is made. An innocent purchaser will be protected, without regard to the terms of the contract of sale, where the appearance of ownership is in one while the title is really in another or there is a secret lien. (*VanDuzor* v. *Allen*, 90 Ill. 499; *Chickering* v. *Bastress,* 130 id. 206; *Union Stock Yard and Transit Co.* v. *Mallory,* 157 id. 554.) Clothing another person with the indicia of ownership does not mean simply giving possession of a chattel. Possession of a chattel is one of the indications of title, but possession may be delivered by the owner to a bailee, an agent or a servant, and the mere possession of a chattel, if there is no other evidence of property given by the owner, will not enable the possessor to give a good title. Owners of chattels must frequently intrust others with their possession, and the affairs of men could not be conducted unless they could do so with safety, so long as the possession of the chattel is not accompanied with some indicium of ownership or the right to sell. (24 R. C. L. 375.)

Applying these doctrines to the facts of this case, Smith had no title to the car and could not transfer title, and the bank by virtue of its execution could not acquire title through him because he had none. There was no basis whatever for application of the doctrine of estoppel against the plaintiff, who was the owner of the car. When the plaintiff, with Smith and Benson, went to Adam Schillo's garage and the bargain was made for a sale of the car it was to remain in the garage until paid for, but Schillo was to let Smith take it when he called for it. That, of course, was with the expectation that the contract would be carried out, but Smith gave the plaintiff a worthless check, which was protested, and the contract was canceled and the sale rescinded before Smith had taken possession. The argument that the sale was not rescinded because the plaintiff did not return to Smith the worthless check is not applicable

except between the parties to a sale. The party attempting to rescind must rescind *in toto* and return what he has received to the other party if it is of any value or creates any liability. (*Dillman* v. *Nadlehoffer,* 119 Ill. 567; *Preston* v. *Spaulding,* 120 id. 208; *Rigdon* v. *Walcott,* 141 id. 649; *Babcock* v. *Farwell,* 245 id. 14.) Parties to a sale who are competent to contract may not only make their contracts to suit themselves, but may cancel a contract and absolve themselves from its obligations upon such terms as they choose by mutual agreement. Smith did not require the return of his worthless check, which was brought into the court at the trial, but the sale was rescinded, and when Smith took the car from Schillo's garage he excused himself that he was drunk and promised to bring it back. There was no estoppel.

It is said that the first instruction given at the instance of the plaintiff was wrong in stating that if Smith wrongfully obtained possession of the car and held it wrongfully and without authority from the plaintiff when it was converted by the defendant, the defendant was not in the position of an innocent purchaser for value and took no better title to the car than Smith had at the time of the conversion. The criticism stated is, that a judgment creditor stands in the position of an innocent purchaser for value. The hypothesis of fact that Smith wrongfully obtained possession of the car and held it wrongfully and without authority from the plaintiff necessarily led to the legal conclusion that the defendant took no better title than Smith had, and it was immaterial whether the defendant, as a judgment creditor, was in the position of an innocent purchaser for value or not. What was said in the instruction upon that subject was wholly immaterial.

Instructions 3 and 10 are said to be wrong. Instruction 3 stated that all that needed to be shown in an action of trover for the conversion of personal property is the ownership of the property by the plaintiff, that it came into

303–22

the possession of the defendant, and that the defendant converted it to his own use.   It was of an abstract nature and gave no attention to the question raised by the evidence and involved in the case.   It should not have been given, but it did no harm because the verdict could not have been different from what it was.   The objection to instruction 10 is, that it stated that the measure of plaintiff's damages in case of recovery would be the retail market value of the property.   The measure of damages was the fair market value of the car.   While it might be error as to some species of property to advise a jury that the damages would be measured by retail value it could not have any influence on the verdict as to the car, which, like any other vehicle or animal, is not the subject of wholesale and retail trade.

The court refused to give to the jury this instruction asked by the defendant:

"The court instructs the jury as a matter of law that where one of two innocent persons must suffer as the result of a wrong committed by a third person, the loss must fall upon the one of the two parties who by his acts or conduct put it within the power of the third party to cause the loss."

The instruction was abstract in form, and it is not error to refuse such an instruction not applied to the evidence. If the jury attempted to apply the instruction to the evidence it could only benefit the defendant if they found that the plaintiff by his acts or conduct had put it within the power of Smith to cause the loss, and there was no basis in the evidence from which such an inference could be drawn. These are the only alleged errors worthy of attention.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*