Hausman Steel Company, Appellant, v. N. P. Severin Company, Appellee.

Gen. No. 42,253.

Heard in the third division of this court for the first district at the June term, 1942. Opinion filed December 9, 1942.

Duck & McManigal, of Chicago, for appellant; Thomas Marshall, of Chicago, of counsel.

J. E. Yaffe, of Chicago, for appellee.

Mr. Presiding Justice Burke delivered the opinion of the court.

In a second amended statement of claim filed in the municipal court of Chicago, the Hausman Steel Company, a corporation, plaintiff, sought damages in the sum of $7,773.94 and interest. Plaintiff alleged a breach by the defendant on September 13, 1938 of a contract entered into on August 12, 1938 for the installation by plaintiff, as subcontractor, for the agreed price of $20,400, of removable steel pans or "forms" as temporary foundations on which defendant, as general contractor, was to pour concrete floors in buildings 18, 19 and 20 of the United States Veterans' Hospital at Dayton, Ohio, then in the course of erection. This amended statement of claim sets out the entire correspondence between the parties from April 16, 1938 to September 13, 1938. The defendant denied that it entered into a binding contract with the plaintiff. A trial before the court without a jury resulted in·a finding and judgment for the defendant and against the plaintiff. This appeal followed.

Plaintiff is an Ohio corporation, with its principal offices at Toledo. Defendant is an Illinois corporation, with its principal offices at Chicago, engaged in the business of building construction, and in June 1938 was awarded a contract by the United States Government for the construction of three buildings, commonly referred to as Military Home Buildings 18, 19 and 20 for the United States Veterans' Hospital at or near Dayton, Ohio. Defendant negotiated with many subcontractors, among them the plaintiff, for the various divisions of the work. Plaintiff submitted its bid to this defendant as well as to 25 or 30 other general

contractors who were endeavoring to secure the general contract. The defendant negotiated with the plaintiff and others for a subcontract for the supplying of the metal pans for use as forms, and for the labor of erecting, centering and dismantling them in connection with the construction of the concrete floors of the buildings. On June 13, 1938 plaintiff sent out to defendant and other bidders a preliminary proposal. Defendant sent a letter to plaintiff and other bidders that it was its intention to award the work during "our representative's visit to Dayton, Ohio from August 9th to August 13th." On August 6, 1938 defendant wrote plaintiff: "Replying to your letter of August 3rd, please be advised that we expect to close the matter of metal pans on the above project in Dayton on Thursday, August 11th. Our representative, Mr. B. J. Myren, will be at the Van Cleve Hotel in Dayton at that time." Accordingly, on August 11, 1938 Mr. B. J. Myren, secretary of defendant, met with Mr. Hausman, president and treasurer of plaintiff, and they discussed some of the details with reference to a subcontract for the supplying of the metal pans as forms and for the labor of erecting, centering and dismantling them. On August 12, 1938 Mr. Myren (then at Dayton) and Mr. Hausman (then at Columbus) had a telephone conversation. Mr. Hausman testified that Mr. Myren said to him: "Well, the job is yours. Go ahead and get your drawings started and send in a proposal in accordance with our conversation. When you send in your revised proposal, I will take care of it." Mr. Myren, in his testimony, denied this, but contends he said: "Yes, we are going to give you the job and will send you a contract from Chicago." By letter dated August 13, 1938 plaintiff forwarded its "revised proposal," which it contends was adopted by the parties as the sole evidence of the contract between them. Defendant admits that plaintiff's exhibit "35" is, in substance, the offer made by

plaintiff to defendant on August 11, 1938. By letter dated September 2, 1938 defendant mailed to plaintiff its standard form of contract dated September 1, 1938, by which it intended to give plaintiff the subcontract for the metal pan work. Plaintiff rejected this contract by its letter dated September 10, 1938, and the defendant thereupon awarded the work to another. Defendant asserts that the letter of September 2, 1938 enclosing the standard form of contract was mailed on or about September 2, 1938. The testimony of plaintiff's witnesses is that the letter and contract were not received by plaintiff until September 10, 1938. It is plaintiff's position that the contract was entered into on August 12, 1938, and that the three proposals were memorials of the contract. Exhibit ''35,'' which plaintiff contends expresses the agreement the parties entered into on August 12, 1938, provides for the payment of $20,400 to plaintiff. Plaintiff declares that in fulfilment of the contract, during the period from August 12, 1938 to September 9, 1938 it prepared and reconditioned 140 tons of steel pans or forms necessary for use on the Dayton jobsite on September 10, 1938, as instructed by defendant; that on September 8, 1938 plaintiff commenced delivery of 140 tons of steel pans from its Toledo factory to Dayton, Ohio, and on September 8 and 9, 1938 actually delivered 20 tons of pans to the jobsite at Dayton; and that from September 10 to September 15, 1938 plaintiff's employees were present and working on the job at the jobsite in Dayton. Plaintiff contends that on September 10, 1938, while it was in the process of delivering its steel forms, and at a time when plaintiff had already expended $2,440.42 in reliance upon exhibit ''35'' as the evidence of the contract between the parties, defendant submitted to plaintiff a confiscatory, variant and pretended substitute form of contract, whereby plaintiff's costs would have been increased by $2,325, and its anticipated profits reduced 43½ per cent; that

thereupon plaintiff refused to sign defendant's forms of contract; that plaintiff brought its materials back from Dayton to Toledo; and that because of the breach of the contract by the defendant, plaintiff was damaged in the sum of $2,413.94 because of the expense incurred, and $5,360 loss of profit, together with interest from September 13, 1938.

Plaintiff insists that an oral contract was entered into between the parties on August 12, 1938, the terms of which are set out in plaintiff's revised proposals of August 13, 1938; that the revised proposals were adopted by the parties as the sole evidence of the contract between them; that the defendant cannot now vary the terms of the revised proposals, and that by reason of the wrongful breach of the contract, plaintiff suffered a loss of $7,773.94. Defendant contends that it was the express intention of both the plaintiff and defendant that a contract in writing be entered into between them and signed by both parties before it became binding upon either. The rule is that where the parties make the reduction of the agreement to writing, and its signature by them, a condition precedent to its completion, it will not be a contract until that is done. (*Baltimore & Ohio Southwestern R. Co. v. People ex rel. Allen,* 195 Ill. 423, 427.) To constitute a binding contract, the minds of the parties must meet upon the essential terms. On August 26, 1938 plaintiff wrote to defendant, and among other things, said: "Incidentally, we have not received our signed contracts." On September 1, 1938 plaintiff wrote again to defendant, and among other things, said: "Of course, we should have a signed contract before shipping any material, but you know as well as we do that a thorough understanding should be obtained before we get into the field. . . . In the meantime we hope that your Chicago office gets the contract straightened out properly so we both know exactly where we stand." On August 18, 1938 defendant

wrote plaintiff, and said, among other things: ''Due to simultaneous accumulation of contracts, some delay is being experienced in getting them out. However, contract for pans and centering will be sent you as quickly as possible, probably within the next few days.'' In plaintiff's letter of August 13, 1938, with which it enclosed the revised proposals of the same date, it states: ''Enclosed herewith find revised proposals on the above job.'' In its letter of September 1, 1938 plaintiff said: ''For instance, you seem to have the impression that we form all beam tees, which, of course, is in error and so that you will understand our proposal, a copy is enclosed herewith, together with a copy of our standard drawing R-1.'' In plaintiff's letter of September 10, 1938 we find the following: ''We cannot possibly sign this contract as it is not in accordance with our proposal. . . . If you want to prepare another form embodying our proposal, it will meet with our approval . . . and if you want us to proceed, we had better take quick action . . . .'' As a postscript to that letter, appears the following: ''If you prefer, sign and return one copy of the enclosed proposal.'' We agree with the defendant's contentions that the parties did not concur on the essential terms of their negotiations for a contract, and that the minds of the parties did not meet on the essential terms. We have carefully read the testimony and the exhibits, and are of the opinion that the trial judge decided the case correctly. It is manifest that it was the intention of both parties that a written and signed contract be entered into between them. The expenses incurred by the plaintiff while it was negotiating for a contract are not recoverable.

Plaintiff charges that the testimony of defendant's witnesses Myren, Brendt and Eastman was totally discredited, and that the overwhelming weight of the evidence supports the plaintiff. The trial judge heard and observed the witnesses, and we are of the opinion

that the record supports his findings. Plaintiff points out that section 41 of the Civil Practice Act (sec. 165, ch. 110, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 104.041]) provides that "allegations and denials, made without reasonable cause and not in good faith, and found to be untrue, shall subject the party pleading the same to the payment of such reasonable expenses, to be summarily taxed by the court at the trial, as may have been actually incurred by the other party, by reason of such untrue pleading." This is the same as rule 36 of the municipal court of Chicago. We find that the trial court exercised a proper discretion in declining to invoke this provision.

Because of the views expressed, the judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

HEBEL and KILEY, JJ., concur.