Calo, Inc., an Illinois Corporation, Also Known as Calo Bowl, Chicago National Bank, Not Individually, but as Trustee Under Trust No. 13953, and Albert Sakolsky, Plaintiffs, v. AMF Pinspotters, Inc., and American Machine & Foundry Co., a Corporation, Defendants-Appellees.
On Appeal of Calo, Inc., an Illinois Corporation, Also Known as Calo Bowl.

Gen. No. 48,187.

First District, Third Division.

June 30, 1961.

Rehearing denied July 19, 1961.

Meyer and Irving H. Weinstein, of Chicago (Meyer H. Weinstein, of counsel), for appellants.

Branko M. Steiner, of Chicago, for appellees.

MR. PRESIDING JUSTICE McCORMICK Delivered the opinion of the court.

A suit in contract was filed by Calo, Inc., an Illinois corporation, also known as Calo Bowl, Chicago

National Bank, not individually, but as Trustee under Trust No. 13953, and Albert Sakolsky. The action was filed in the Municipal Court of Chicago. The defendants made a motion to strike plaintiffs' third amended complaint and dismiss the proceedings. After a hearing the court sustained the motion and dismissed the proceedings. This appeal is taken from that judgment order by Calo, Inc., an Illinois corporation, also known as Calo Bowl (hereafter referred to as Calo). The other plaintiffs are not appealing.

Calo's theory is that the contract was made up of various writings, and that it was effective to bind the defendants, even though it was not signed, since it had been acted on.

The defendants contend that the written offer submitted by Calo was not accepted either in accordance with its provisions or by any act or acts on the part of the defendants which would constitute even a partial performance or acceptance of Calo's proposal; that no written contract was entered into between the parties, and if a verbal agreement had been reached it would have been within the prohibitions of the pertinent provisions of the statute of frauds; and that hence plaintiffs' third amended statement of claim fails to state a cause of action.

The third amended statement of claim of the plaintiffs contains two counts. Count two was filed on behalf of Albert H. Sakolsky. He takes no appeal and consequently we are here not concerned with that count. In count one the statement of claim alleges that the plaintiffs had leased certain premises formerly used as a public theater and that under the terms of the lease the premises were being remodeled for use by Calo as a bowling alley and cocktail lounge; that by the terms of the lease Calo, as lessee, and the lessor were required respectively to do certain things in the remodeling; and that no rentals would accrue

4

to the lessor until the completion of the remodeling and the business of Calo had begun. The statement of claim further alleges that on November 26, 1958 the defendants prepared and presented to Calo an offer to be made by Calo to the defendants for the purchase of certain items of equipment and the rental of other items of equipment by Calo from the defendants for installation and use in said premises. This offer is attached to the statement of claim as exhibit B. The statement of claim further alleges that concurrently with the offer the defendants "delivered their acknowledgment and acceptance thereof," and the alleged acceptance is attached to the statement of claim as exhibit C. The statement of claim also alleges that when Calo informed the defendants that the permits and licenses were available the defendants requested, and Calo paid to the defendants, the further sum of $5,000, which payment was accepted by the defendants; that the defendants thereupon prepared and delivered to Calo plans and specifications for the purpose of having the premises so remodeled as to fit them specifically for the installation of the equipment in question and represented to Calo that the installation would be completed by defendants in time to permit Calo to solicit and accept 1959 summer bowling league business; and that the remodeling in the premises according to the plans and specifications was done under the direction and supervision of the defendants. The statement of claim also alleges that Calo relied upon the representations of the defendants and caused advertising to be published with regard to the bowling alley; that on January 7, 1959 the defendants by letter advised Calo that the defendants "could not accept" the offer to purchase and rent the equipment, and the letter is attached to the statement of claim as exhibit E. Count one of the statement of claim further alleges damages on the part of Calo and prays for judgment.

5

The defendants filed a motion to strike, which, among other things, alleged that the purchase order, or offer, of Calo to the defendants was not signed by the defendants though by its terms it was required to be signed by the defendants before it became an effective contract; that the allegation of Calo in paragraph six of its statement of claim that the defendant had accepted the offer as shown in exhibit C is not borne out by the exhibit; that when Calo in paragraph seven of its statement of claim alleges that it informed the defendant that it had received all necessary permits and licenses and that it was then ready to proceed with its offer, such allegation is immaterial since there is no allegation that the defendants accepted the offer; that Calo's allegation that it paid the defendants a further sum of $5,000 at the defendants' request was immaterial since by the terms of the offer the payment of the sum of $5,000 was an additional deposit and could become effective only if the defendants accepted the offer, and the offer so provided; that paragraph nine of the statement of claim in which Calo alleges that the defendants caused to be prepared and delivered to it plans and specifications for the purpose of having the premises remodeled is false in that exhibit D, which consists of the "plans," was merely a plan or sketch showing how the bowling lanes were to be installed in the space and area which they would require; that under the terms of the offer the delivery of such sketch was conditionally made subject to the acceptance of the offer; that since there was no written agreement the alleged agreement falls within the prohibition of the statute of frauds; and that under the terms of paragraph twelve of the statement of claim the deposits made by Calo were refunded by the defendants and accepted by Calo.

The offer made by Calo to the defendants is entitled "Purchase Order," and states that Calo "does

6

hereby order and, upon Seller's acceptance, agrees to purchase the equipment described below . . . ." It further provides that the purchase price is $42,629.04 with an installation charge of $5,000, which, together with taxes and insurance charges, made a total price of $49,122.91, "which contract price purchaser agrees to pay Seller or Seller's assigns as follows:

Initial Cash Payment
 Down payment on Contract
 Price .................:......$3,122.91
Other Cash Payments
 Due upon notice from seller
 approximately 90 days be-
 fore shipment ............ 5,000.00
 Due upon notice from seller
 approximately 30 days be-
 fore shipment ............ 5,000.00
Total Prepayments on Contract Price..$13,122.91."

It further provides that the balance shall be evidenced by a note signed by the purchaser and secured by a chattel mortgage, and shall be payable in 32 equal instalments beginning in 1959. On the reverse side of the order it is stated: "Said Order is Subject to the Following Conditions." These conditions, among other things, provided: "Acceptance of this order by Seller at Seller's office in New York or Chicago shall be necessary to constitute a contract . . . . The receipt and retention of cash advances received with or in connection with this order shall not be considered as an acceptance of it but only as a deposit on account in the event that the order is accepted in whole or in part." The purchase order had written on it "Calo Bowl" and the signatures of Herbert H. Miller, president, and Ruth Miller, secretary.

A letter of the same date, exhibit C attached to the statement of claim, was addressed to Mr. H. H. Miller

7

·and stated that the. defendants agree to · return the full deposit of $2,556.77 "in case you are not able to obtain complete permits, liquor license and other agreements to fulfill your bowling project." (No explanation is given accounting for the difference between the amount of the deposit stated in the purchase order and the amount stated in the letter to be the full deposit.) The letter further stated that the agreement applies to the installation of ten AMF DeLuxe Lanes scheduled to be installed approximately February 1, 1959 in the Calo Theatre, and the letter further states that it "is a receipt for the $2556.77 received as a deposit on the purchase order JEL-543 from Herbert H. Miller." The letter is signed by the defendants' equipment sales engineer. This letter becomes a part of Calo's offer and is not in any sense an acceptance of the offer as is alleged in the sixth paragraph of the statement of claim.

 It is elementary law that in order for a contract to come into being there must be mutual assent of all of the parties thereto. Contracts are ordinarily made by an offer and acceptance. "An offer is an expression by one party of his assent to certain definite terms, provided that the other party involved in the bargaining transaction will likewise express his assent to the identically same terms. An offer looks forward to an agreement—to mutual expression of assent." Corbin on Contracts, sec. 11. An offer is always a conditional promise and it may become a contract. Williston on Contracts, 3rd ed., sec. 25. If no specific time limit is fixed with reference to the offer it continues for a reasonable time. If no specific mode of acceptance is specifically fixed in the offer, the acceptance need not be in any particular form nor evidenced by express words. Where the parties make the reduction of the agreement to writing and its signature by them a condition precedent

to its completion, it will not be a contract until this is done. Hausman Steel Co. v. N. P. Severin Co., 316 Ill App 585, 589, 45 NE2d 552, 554; Baltimore & Ohio Southwestern R. Co. v. People ex rel. Allen, 195 Ill 423, 427, 63 NE 262, 263. All that is necessary to make a binding contract is that the minds of the parties must meet on the essential terms. Sellers v. Greer, 172 Ill 549, 50 NE 246.

"If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract. If an offer merely suggests a permitted place, time or manner of acceptance, another method of acceptance is not precluded." Restatement of the Law of Contracts, sec. 61. "Acceptance of an offer is an expression of assent to the terms thereof made by the offeree in a manner requested or authorized by the offeror. If anything except a promise is requested as consideration no contract exists until part of what is requested is performed or tendered. If a promise is requested, no contract exists, except as stated in § 63, until that promise is expressly or impliedly given." Restatement of the Law of Contracts, sec. 52. In *Comment b* it is stated: "A bilateral contract by definition consists of mutual promises. It is therefore essential that the offeree shall give the promise requested by the offeror, and doing this clearly indicates acceptance of the offer. The fact that this promise is given may be shown by any words or other acts which indicate the offeree's assent to the proposed bargain."

"An assent to an offer is an act of the mind. If the party making an offer does not require an immediate response, and the offer itself seems to contemplate acceptance, assent of the other party will be implied, in the absence of a revocation, from his acting pursuant to it within a reasonable time. (6 RCL 605, 606.) The assent to the offer must be substantially

9

as made." Johnson v. Whitney Metal Tool Co., 342 Ill App 258, 96 NE2d 372.

■■ Where a bilateral contract is in the contemplation of the parties, in order to have a completed contract there must be reciprocal promises. Where an offer has been made it may be accepted by an overt act, and Professor Corbin in his work on contracts (Corbin on Contracts), sec 62, says:

> "Acceptance by words, whether written or oral, is acceptance by overt action. The words 'I accept your offer', spoken by the offeree, are overt action by him. It will be seen, therefore, that acceptance is by overt act, without regard to whether the resulting contract is bilateral or unilateral, whether the acceptance is promissory or nonpromissory. Ordinarily, the making of a promise is by overt action.
> "...
> "Without doubt, many cases can be found in the reports illustrating the offer of a promise for an act, in which the act is promissory and the resulting contract bilateral. . . ."

In a footnote to this section the statement is made: "There are many cases in which the only acceptance of an offer was the performance of some action from which a promise would be inferred." In section 562 it is said:

> ". . . The process of implication is treated instead as a process of interpretation, a process of logical and factual inference and not a pure construction or creation by the court. An implied promise, therefore, is here treated as a promise implied in fact, a promise that the promisor himself made, but a promise that he did not put into promissory words with sufficient clearness to be called an 'express promise.' When a court finds

10

and enforces such a promise as this, it finds it by interpretation of the promisor's words and conduct in the light of the surrounding circumstances. This is the exact process by which the meaning of any contract is determined, whether it be described as an express contract or an implied contract. It is the same whether the contractor expressed his intentions in the form of words, oral or written, or expressed them by conduct wholly non-verbal, or used both forms of expression together. The meaning of his words and acts is found by relating them to the usage of the past; this is interpretation."

In Soelzer v. Soelzer, 382 Ill 393, at 399, 47 NE2d 458, 460, the court says:

"The law is well settled that, as to contracts generally, a party named in the contract may by his acts and conduct become bound by its provisions even though he has not signed it."

In Memory v. Niepert, 131 Ill 623, 23 NE 431, the court holds that a party, by accepting and adopting a written contract not signed by him, but by the other party alone, thereby assents and agrees to its terms on his part, and the law implies a promise to perform. The court says (pp 631-2):

"The delivery of a writing and its acceptance and adoption by the party to whom it is delivered, are necessarily facts dehors the writing itself, and must therefore be proved by extrinsic evidence; and where mutuality is established by proof of the acceptance of the writing, the contract is, notwithstanding such resort to parol evidence, a contract all of which is in *writing*. Of course where the writing is on its face a mere offer or proposition, the acceptance of the paper

11

does not necessarily bind the party accepting to its terms. There must in such case be some further act manifesting an acceptance of the proposition, and whether the contract, after acceptance, will be deemed to be a contract in writing, within the meaning of the fifteenth and sixteenth sections of the Statute of Limitations or not, must depend upon a variety of circumstances."

In Ludowici-Celadon Co. v. McKinley, 307 Mich 149, 11 NW2d 839, which was a case where a proposal was made by a roofing tile manufacturing company to furnish a specified quantity of tile at a specified price, signed by the manufacturing company's representative and reciting that an acceptance of the proposal would constitute a contract, subject to the approval of the seller's executive department, the seller-company manufactured special tile and shipped a portion of it to the buyer. The court says:

"The proposal which was signed on April 14, 1941, was merely an offer to purchase, because it was 'subject to the approval of' the seller's executive department. Thus, the sole question presented is whether the offer to purchase tile of the value of $2,526 was accepted by the seller so as to effectuate a binding contract.

"In Malooly v. York Heating & Ventilating Corp., 270 Mich 240, 253, 258 NW 622, 626, the court quoted from Lang & Gros Mfg. Co. v. Fort Wayne Corrugated Paper Co., 7 Cir, 278 F 483, 487, as follows: 'The contract of a party in making performance in pursuance of a definite proposition is an acceptance of the proposition.'

"It was there held that 'an acceptance of an offer to contract may be implied from the acts and circumstances of the parties.' This same rule is expressed in the Restatement of the Law of

12

Contracts, § 21, as follows: 'The manifestation of mutual assent may be made wholly or partly by written or spoken words or by other acts or conduct.'

"The written proposal was 'subject to the approval' of the executive department of plaintiff corporation. When it manufactured the special tile and shipped a portion thereof to defendants, such acts and conduct constituted an approval of the proposal. . . .

"The West Virginia court said in the Wood case [89 W Va 254, 109 SE 244, 19 ALR 467]: '. . . an offer to buy becomes a binding agreement when the offeree performs an act from which acceptance may be implied. 35 Cyc 52; Colgin v. Henley, 6 Leigh, Va, 85. It follows, therefore, that since plaintiff's offer prescribed no specific form of acceptance, it may be implied from conduct as well as from words. 1 Page, Contracts, § 188; Clark, Contracts, p 24. . . . The law is settled that the shipment of a part of an order of goods is an acceptance of the whole order.' "

The court cites Columbia Weighing Machine Co. v. Vaughan, 123 Kan 474, 255 P 973, 974, and says with reference to that case:

". . . The court held that acceptance may be shown by any act or conduct clearly evincing an intention to accept the offer made and that delivery of the merchandise ordered clearly evinces the intention to accept. It was held that the offer was not divisible with respect to the mechanical parts required, and that, when plaintiff accepted the offer, it was accepted in its entirety, and that it could not be accepted in any other way. Therefore, it was held that both parties became bound

13

by all the conditions and provisions of the written offer."

See also Keirsey v. Hirsch, 58 NM 18, 265 P2d 346, 43 ALR2d 929.

In the instant case the offer of November 26, 1958 made by Calo to the defendants must be considered with the defendants' letter of November 26, 1958 to Calo. In its offer Calo agreed to purchase certain items of equipment and to rent other items of equipment from the defendants for installation and use in the premises of Calo. The offer further provided for the total price that Calo promised to pay by way of a down payment, a further sum of $5,000 "upon notice from seller approximately 90 days before shipment" and a further $5,000 "upon notice from seller approximately 30 days before shipment," and the balance to be paid over a period of four years, which balance was to be evidenced by a note secured by a chattel mortgage. The letter of November 26th provided that the defendants would agree to return the deposit in case Calo was unable to "obtain complete permits, liquor license and other agreements to fulfill your bowling project." Consequently the offer of Calo to the defendants was a conditional offer depending upon the obtaining of the necessary licenses and permits. Under that conditional offer Calo had made a down payment which by the terms of the offer was a deposit and was to be treated as a payment on account in case the order was accepted. The purchase order also provided: "Acceptance of this order by Seller at Seller's office in New York or Chicago shall be necessary to constitute a contract . . . ." No particular mode of acceptance was provided for in the purchase order.

When the defendants accepted the offer there would have been in existence a promise on the part of Calo to purchase and rent certain equipment from the de-

14

fendants at a specified price and upon certain terms of payment, and a reciprocal promise on the part of the defendants that they would supply such articles and the implied promise that they would install the material rented. Such implied promise may be found in the following provision of the offer: "Installation charge 'ONLY' for 10 AMF automatic pinspotters as per lease agreement dated November 26, 1958" and also "Installation Charge 10 $5,000.00." (The lease agreement does not appear in the record and it is apparent that the parties to the suit treated this purchase order as being an order for both purchase and rental of the described equipment.)

The question presented to us is whether there was an acceptance on the part of the defendants which would bring into existence a contract. That question, of course, must be decided from the allegations made in the third amended statement of claim.

■ In the statement of claim Calo alleges that the defendants had accepted the offer as evidenced by exhibit C attached to the statement of claim. However the exhibit does not support that statement, and consequently the allegation may be disregarded. In the statement of claim Calo further alleges:

"7. Thereafter, said Calo, Inc. informed the defendants all necessary permits and licenses mentioned in said Exhibit 'B' were available and said Calo, Inc. was then ready to proceed with its said offer to purchase and rent from the defendants.

"8. When said Calo, Inc. so informed the defendants concerning the permits and licenses, the defendants requested and said Calo, Inc. paid to the defendants the further sum of $5,000.00 on account of the contract price which said Calo, Inc. paid to said defendants and the same was accepted by the defendants on December 23, 1958.

15

"9. The defendants caused to be prepared and delivered to said Calo, Inc. plans and specifications for the purpose of having said premises so remodeled as to fit them specifically for the installation of the equipment to be sold and rented by the defendants to said Calo, Inc. which plans and specifications are Plaintiffs' Exhibit 'D'; that defendants represented to said Calo, Inc. that such installation would be completed by defendants in ample time to permit said Calo, Inc. to solicit and accept 1959 summer bowling league business.

"10. Said remodeling in said premises according to said plans and specifications, being Plaintiffs' Exhibit 'D' was then done under the direction and supervision of the defendants."

Calo also in its statement of claim alleges that upon receiving the defendants' letter of January 7, 1959 "for the purpose of installing the other comparable equipment, said Calo, Inc. found it necessary to again remodel and make changes in said premises to fit the same to properly receive the comparable other equipment . . . ." These statements are not conclusions. They are statements of fact, and as such are admitted by the motion to strike.

The offer made by Calo, conditioned upon its obtaining certain licenses and permits, became a firm offer at the time when it informed the defendants that such licenses and permits were available and that it was then ready to proceed with its said offer to purchase and rent the equipment. The offerees then asked for an additional deposit of $5,000, which by the terms of the offer was to be made 90 days before the equipment was shipped. The offeror paid the $5,000 to the offerees. At the same time the offerees submitted plans and specifications indicating the method of in-

16

stalling the particular equipment in question, and represented that the installation would be completed in ample time to permit the solicitation of 1959 summer bowling league business. The offerees supervised the remodeling of the premises in accordance with the plans and specifications which they had submitted. The offeror was anxious to get a bowling alley in operation, and was not a lawyer nor skilled in the interpretation of contracts. Such acts, taken together, could be interpreted by a reasonable person as an acceptance of the offer, and consequently a promise to perform on the part of the offerees could be implied therefrom. Williston on Contracts, 3rd ed, sec 22A. In our opinion there was a sufficient acceptance of the offer made by Calo, and defendants thereby became bound to furnish the equipment under the terms and specifications of the offer.

The contract here by the acceptance of the defendants became a contract in writing, and a down payment was made upon the goods ordered. The provisions of the statute of frauds (Ill Rev Stat, chap 121½, par 4) do not prohibit the enforcement of the contract.

In Ames v. Moir, 130 Ill 582, 22 NE 535, the court holds that where one party gives another his written agreement to purchase personal property in which the buyer and seller are both named and the price to be paid and the time of delivery are fixed, an acceptance not evidenced by writing of the other party is sufficient, and the court says (p 590): "When Moir & Co. accepted the paper as a contract, they became bound by its terms and conditions as completely as if they had in form signed the paper. It was, in our opinion, a contract in writing, within the meaning of the statute. See also, Plumb v. Campbell, 129 Ill 101, 18 NE 790." (The statute referred to was the statute of limitations.)

17

The principal question before the trial court was as to whether the statement of claim sets out a cause of action. By the filing of the motion to strike, all the allegations of fact well pleaded in the statement of claim must be considered to be true. In Thornton v. Pasch, 139 P2d 1002 (Utah), the court says: "The question of whether defendants did accept or assent to the plaintiff's offer is a question of fact. The evidence being circumstantial, if there was any substantial evidence from which the defendants' assent or acceptance could be inferred, then the case should have been submitted to the jury." We believe that the rule there set out applies to the instant case. In Stenwall v. Bergstrom, 398 Ill 377, 75 NE2d 864, the court says:

"The complaint, in order to stand, must contain sufficient averments of facts to state a cause of action. We concede that many of the allegations in this complaint are mere conclusions of the pleader, but there are also many statements of fact included. Section 42 of the Civil Practice Act (Ill Rev Stat 1945, chap 110, par 166), provides that no pleading shall be deemed bad in substance which shall contain such information as reasonably informs the opposite party of the nature of the claim or defense, and section 33 of the act provides that pleadings shall be liberally construed with a view to doing substantial justice between the parties. Crosby v. Weil, 382 Ill 538, 48 NE2d 386; Frasier v. Finlay, 375 Ill 78, 30 NE2d 613."

In our opinion count one of the third amended statement of claim sets out a cause of action.

The judgment order of the Municipal Court of Chicago striking count one of the third amended statement of claim and dismissing the suit as to Calo, Inc.,

18

an Illinois corporation, is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed as to count one, and cause remanded.

DEMPSEY, J., concurs.

SCHWARTZ, J., took no part.