ROBERT KIRCHHOFF et al., Plaintiffs-Appellants and Counterdefendants and Cross-Appellees, v. MORTON I. ROSEN et al., Defendants-Appellees and Counterplaintiffs and Cross-Appellants.

First District (5th Division) No. 1—91—0497

Opinion filed March 27, 1992.

William J. Arendt, of Kanter & Mattenson, Ltd., of Chicago, for appellants.

Alan L. Unikel and Bryan W. Sill, both of Seyfarth, Shaw, Fairweather & Geraldson, and Marvin Tenenbaum, of Tenenbaum & Senderowitz, both of Chicago, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiffs Robert Kirchhoff, Carl Kirchhoff, Wayde Kirchhoff, and All-Foam Industries, Inc. (Kirchhoffs), filed this action in chancery claiming fraudulent inducement and sought rescission of a written contract between the parties entitled "Convertible Subordinated Note Agreement" and money damages against the defendants, Morton I. Rosen, James T. Farrell, Valee Foam Plastics, Inc., and Polyfoam Packers, Inc. The defendants defended and contended, among other things, that the convertible subordinated note agreement had been rescinded by mutual consent of the parties prior to this suit. In addition, counterplaintiff Valee Foam Plastics, Inc., filed a counterclaim alleging that counterdefendants Robert Kirchhoff, Carl Kirchhoff, and Wayde Kirchhoff breached their contractual obligations under the convertible subordinated note agreement and sought money damages. Both actions proceeded to trial. The trial court made a directed finding against Valee Foam Plastics, Inc., on its counterclaim and entered judgment against the Kirchhoffs on their third amended complaint. Both rulings are challenged by the respective parties on appeal.

In March 1977, Morton I. Rosen (Rosen) and James T. Farrell (Farrell) formed Valee Foam Plastics, Inc. (Valee). Valee went into the business of selling expandable polystyrene (EPS) foam molded products. In EPS foam molding, small beads of polystyrene are deposited into a mold and, through the application of heat and pressure, the beads expand to take the shape of the mold. Examples of an EPS foam molded product are a "styrofoam" coffee cup or the foam packaging used to protect a toaster in shipment.

At the same time, the Kirchhoffs were engaged in the business of selling, repairing and maintaining steam generating boilers, both new and used, which were employed in the manufacturing of EPS foam molded products. They also operated their own EPS foam molding plant, All-Foam Industries, Inc. In addition, the Kirchhoffs were in the business of designing, selling and installing equipment and layouts of EPS foam molding plants for other EPS foam molding manufacturers.

During 1977 the Kirchhoffs entered into negotiations with Rosen and Farrell to design an EPS foam molding plant for Valee. In

December 1977 the parties formalized their relationship by executing the "Convertible Subordinated Note Agreement" (Note Agreement) and other corresponding written agreements. The Note Agreement provided that the Kirchhoffs were obligated to provide Valee with:

1. a compressed air system;
2. a steam system;
3. an expanded bead storage system;
4. an expanded bead transfer system;
5. a water softening system;
6. a bead preexpansion system;
7. a cooling water recirculation system;
8. a fuel storage tank;
9. molding machine installation; and
10. engineering services.

In exchange, Rosen and Farrell were required to pay the Kirchhoffs $160,000 ($60,000 of which was paid upon execution of the Note Agreement and $100,000 to be paid over time under a promissory note), plus 8% interest on all unpaid amounts.

From February 1978 to April 1978 the Kirchhoffs worked on the installation of the Valee plant. In May 1978 the Kirchhoffs turned over the plant to Valee. The Kirchhoffs assert that the plant was fully operational at that time.

Immediately thereafter, Rosen requested certain additions and modifications be made to the plant. The total additions and modifications cost $18,000. These items were supplied and invoiced separately.

After the Kirchhoffs completed installation of the EPS foam molding equipment in the Valee plant in May 1978, disputes arose between the parties as to the adequacy of some of the equipment and installation work provided by the Kirchhoffs and the alleged failure of the Kirchhoffs to provide other equipment and services. Valee asserted and maintained that the Kirchhoffs' performance under the Note Agreement was not satisfactory. Rosen and Farrell never paid the Kirchhoffs the $100,000, and they only made two of the quarterly interest payments required under the Note Agreement (one in November 1978 for $2,000 and the other in February 1979 for $2,000).

On January 21, 1983, the Kirchhoffs sent a letter indicating an election to rescind the October 1, 1977, agreement. The Kirchhoffs' January 21, 1983, correspondence provided:

"January 21, 1983

Mr. Morton I. Rosen
1805 Apache Lane
Mt. Prospect, IL 60056

James T. Farrell
2320 South Foster
Wheeling, IL 60090

Valee Foam, Inc.
2320 South Foster
Wheeling, IL 60090

Polyfoam, Inc.
2320 South Foster
Wheeling, IL 60090

Re: Rescission of Convertible Subordinated
Debenture Agreement Dated October 1, 1977 and
*Agreement to Provide Manufacturing Services*

Gentlemen:

The undersigned hereby elect to rescind the above agreement and by this letter demand the return of all consideration provided by them. We hereby offer to return consideration provided by you, if any.

In addition, the undersigned seek reasonable compensation for their services in design, installation and labor for the set up of the plants being operated by Valee Foam, Inc. and Polyfoam, Inc.

Allfoam Industries, Inc. hereby rescinds its agreement to supply manufacturing services and products to you and demands return of the value of its services and products. Allfoam Industries, Inc. hereby offers to return all consideration due, if any.

We expect a response to this notice within seven days.

Very truly yours,

Carl Kirchhoff
Robert Kirchhoff
Wayde Kirchhoff"

On February 9, 1983, Valee responded to the Kirchhoffs' offer to rescind the Note Agreement. Valee's correspondence provided:

"February 9, 1983

Mr. Carl Kirchhoff
Mr. Robert Kirchhoff
Mr. Wayde Kirchhoff
All Foam Industries, Inc.
471 Monroe Street
Elmhurst, IL 60126

RE: Your demand for rescission of 'Convertible Subordinated
    Note Agreement' dated October 1, 1977

Gentlemen:

We hereby acknowledge and agree to your demand for rescission of the above mentioned agreement. We have already begun to take steps to return certain items, two boilers and distribution panel and an air compressor which were involved. You will receive other items as soon as practical. (As you are aware, however, some of the items furnished to us were useless, and, long ago, had to be discarded.) We feel it would be useful for us to meet and discuss how best to effectuate the return of consideration, and we therefore, respectfully request a meeting at your earliest convenience.

Very truly yours,


James T. Farrell
Morton Rosen
Valee Foam, Inc.
Polyfoam Packers Corporation"

Thereafter, Valee returned the following equipment: (1) one air compressor ($6,000); (2) one water-cooled aftercooler ($1,300); (3) two 150-horsepower Vapor boilers ($20,000); (4) two boiler pads ($300); (5) one automatic bead control panel (Kirchhoffs claim no value whereas Valee claims it is worth $4,100); (6) one blueprint of bead system and its components (no value); (7) one cooling tower ($3,500); and (8) one water softening system ($5,500). The Kirchhoffs claim that the total value of the returned equipment was $36,600. Valee claims the returned equipment was worth $40,700.

In February 1983 the Kirchhoffs filed this action in the chancery division of the circuit court of Cook County, alleging that the defendants had fraudulently induced them to enter into the Note Agreement. The Kirchhoffs also alleged as a part of the fraud that defendants had requested the Kirchhoffs' All-Foam division to manufacture foam products for Valee, intending not to pay for them.

In 1987 the Kirchhoffs filed a breach of contract action in the law division of the circuit court of Cook County, Illinois (87—L—27403). Said cause remains pending in the circuit court.

In addition to denying the fraud charges outright, defendants pleaded, as affirmative defenses, that the statute of limitations had run on the fraud claims and that, in any event, the Note Agreement had been rescinded by the parties.

After a full trial on the merits, the trial court found in favor of the defendants on the Kirchhoffs' claims of fraud and also found that the statute of limitations had run on the Kirchhoffs' fraud claim.

On October 26, 1990, the trial court entered a 33-page judgment order that contained 98 findings of fact and 22 conclusions of law. This included the following:

A. Findings of Fact

"82. Defendants received a letter of rescission from the Kirchhoffs in January, 1983 requesting rescission of the Note agreement.

83. In February, 1983, Defendants sent a letter to the Kirchhoffs agreeing to a rescission of the Note agreement.

84. On February 21, 1983, Valee Foam returned to the Kirchhoffs the following equipment that had originally been supplied by the Kirchhoffs as part of the Note agreement: a 40 horsepower Gardner Denver air compressor; a water-cooled aftercooler; two 150 horsepower Vapor boilers; two boiler pads; an automatic bead control panel; and a blue print of the bead system and its components.

85. After February, 1983, Valee Foam returned to the Kirchhoffs a cooling tower and a water softening system that had been originally supplied by the Kirchhoffs as part of the Note agreement.

86. The Kirchhoffs never returned the $60,000.00 in cash and the $4,000.00 in interest payments paid to them by Valee Foam pursuant to the Note agreement."

B. Conclusions of Law

"20. Defendants have filed an affirmative defense that the Convertible Subordinated Note Agreement was rescinded in February 1983 and that Plaintiffs were made whole by the rescission. The evidence established that Plaintiffs and Defendants rescinded the Convertible Subordinated Note Agreement in February 1983. The evidence established that Plaintiffs received $64,000 in cash, plus a quantity of equipment in February 1983 and thereafter that was originally supplied to Defendants by Plaintiffs under the Note agreement. Plaintiffs failed to show that what they received back from Defendants was less than the reasonable value of the goods and services they provided pursuant to the Note Agreement. Further, because of the rescission Plaintiffs are not entitled to either interest or attorney's fees."

On January 15, 1991, the trial court denied the Kirchhoffs' motion for reconsideration of the October 1990 order. Subsequently, the Kirchhoffs filed this timely appeal.

The Kirchhoffs argue that the trial court erred in holding that the Note Agreement had been rescinded by mutual agreement of the parties. The defendants argue that the trial court's finding of mutual rescission is supported by the evidence. In a cross-appeal, Valee argues that if this court finds no rescission of the Note Agreement, their counterclaim based on breach of contract and implied warranties of merchantability and fitness for a particular purpose should be reinstated.

For the following reasons, we affirm the decision of the trial court.

The Kirchhoffs maintain that the trial court erred in holding that (1) a valid and enforceable rescission agreement had been formed by the parties, and (2) that even if a valid and enforceable rescission agreement was formed, the defendants satisfied the conditions precedent of the rescission agreement.

■■ "Rescission" means "to restore the parties to their former position[;] *** a termination of a contract with restitution." (17A C.J.S. *Contracts* §385(2), at 458 (1963).) A contract can be rescinded or cancelled by operation of law or by an agreement of the parties either express or implied. (*Volk v. Kendall* (1979), 71 Ill. App. 3d 211, 213, 389 N.E.2d 697; *Julius Levin Co. v. Rosenfield* (1923), 230 Ill. App. 126, 138.) Even fully executed contracts can be cancelled or rescinded by mutual consent of the parties or judicial decree. (*Chicago Limousine Service, Inc. v. Hartigan Cadillac, Inc.*

(1990), 139 Ill. 2d 216, 564 N.E.2d 797.) In a mutual agreement to rescind, the parties may absolve themselves from their obligations under such terms as they choose. *Drain v. La Grange State Bank* (1922), 303 Ill. 330, 135 N.E. 780.

■ The Kirchhoffs argue that their offer to rescind expired by its own terms seven days after it was issued and 12 days before it was purportedly accepted. If an offer does not state a definite time for acceptance, it lapses if not accepted within a reasonable time. (*Zaniecki v. P.A. Bergner & Co.* (1986), 143 Ill. App. 3d 668, 493 N.E.2d 419.) Restated, if no specific time limit is fixed with reference to the offer, it continues for a reasonable time. (*Calo, Inc. v. AMF Pinspotters, Inc.* (1961), 31 Ill. App. 2d 2, 176 N.E.2d 1.) Moreover,

> " '[i]f an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract. If an offer merely suggests a permitted place, time or manner of acceptance, another method of acceptance is not precluded.' " (*Calo, Inc. v. AMF Pinspotters, Inc.* (1961), 31 Ill. App. 2d 2, 9, 176 N.E.2d 1, quoting Restatement of Contracts §61 (1932).)

Contrary to the Kirchhoffs' argument, the January 21, 1983, letter does not indicate an expiration date for the offer of rescission; the letter merely indicates that a response is expected within seven days.

■ No specific time limit was fixed with reference to acceptance of the offer to rescind the Note Agreement; consequently the offer to rescind continued for a reasonable time. Valee responded by letter dated February 9, 1983. This was only 18 days after the offer was made. The Kirchhoffs did not respond in any way to Valee's letter. The Kirchhoffs never indicated to the defendants that the offer had expired nor did the Kirchhoffs' letter include any reference that time was of the essence. In this case 18 days was a reasonable period of time for acceptance.

■ The Kirchhoffs also argue that the trial court erred in finding a rescission, because they did not receive back everything that they had supplied to Valee. The Kirchhoffs list the items and alleged corresponding dollar amounts of these items. However, there is a difference between a mutual rescission agreement, where the parties agree to a rescission, and situations where a party seeks rescission by operation of law. Open terms in a contract do not prevent the valid formation of a contract, so long as the mutual intent to enter the contract is clear. *Midland Hotel Corp. v. The Reuben*

*H. Donnelley Corp.* (1986), 149 Ill. App. 3d 53, 501 N.E.2d 1280, *aff'd in part & rev'd in part* (1987), 118 Ill. 2d 306, 515 N.E.2d 61.

■■ In a mutual agreement to rescind, the parties may absolve themselves from their obligations under such terms as they choose. (*Drain v. La Grange State Bank* (1922), 303 Ill. 330, 337, 135 N.E. 780, 783.) An agreement to mutually rescind an existing contract can be found from circumstances or a course of conduct clearly evidencing such rescission. (*Hayne v. Fenton* (1926), 321 Ill. 442, 151 N.E. 877.) " 'Just as contracts may be implied from the conduct of the parties, so may a rescission of contracts be implied therefrom. Words amount to very little where actions are conclusive.' " (*Volk v. Kendall* (1979), 71 Ill. App. 3d 211, 213, 389 N.E.2d 697, 699, quoting *Julius Levin Co. v. Rosenfield* (1923), 230 Ill. App. 126, 138.) The conduct of the parties will suffice to show agreement to the terms of the contract. *Likens v. Inland Real Estate Corp.* (1989), 183 Ill. App. 3d 461, 539 N.E.2d 182.

■■ The Kirchhoffs' conduct may be interpreted as a manifestation of their intention to mutually rescind the Note Agreement. The Kirchhoffs sent a letter to Valee offering to rescind the Note Agreement. Eighteen days later Valee sent a letter to the Kirchhoffs accepting their offer to rescind, stating that it would not be feasible to return all of the equipment. Subsequently, the Kirchhoffs accepted Valee's tender of equipment and retained $64,000 previously paid to them by Valee. The Kirchhoffs never indicated to Valee that they considered the offer to rescind lapsed or expired. Moreover, there is no evidence that the Kirchhoffs specified any contingencies or indicated that they did not intend to rescind the Note Agreement when they accepted Valee's tender of equipment. The actions of both parties in this case were consistent with an agreement to rescind the Note Agreement.

A reviewing court will not substitute its judgment for that of the trial court unless an opposite conclusion is clearly evident. A decision is not against the manifest weight of the evidence where the court's decision is supported by the evidence. (*Aetna Insurance Co. v. Amelio Brothers Meat Co.* (1989), 182 Ill. App. 3d 863, 865, 538 N.E.2d 707, 709.) The only relief the Kirchhoffs ask in this case is the reversal and vacation of the trial court's findings of fact 82 through 86 and conclusion of law 20. We find that the trial court's findings of fact and conclusions of law are supported by the evidence in the case. Accordingly, we cannot find that the trial court's decision that the Note Agreement was rescinded by mutual agree-

ment of the parties was against the manifest weight of the evidence.

■ As an alternative to their affirmative defenses, cross-appellant Valee filed a counterclaim against the Kirchhoffs, alleging that the Kirchhoffs breached the Note Agreement by failing to provide and install the EPS foam molding equipment in a workmanlike manner and that the Kirchhoffs breached implied warranties of merchantability and fitness for purpose. After Valee presented its case in chief on the counterclaim, the Kirchhoffs moved pursuant to section 2—1110 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 100, par. 2—1110) for judgment in their favor. The court granted the Kirchhoffs' motion and dismissed the counterclaim. Valee cross-appeals from that order. However, Valee also acknowledges that the cross-appeal is only relevant if this court reverses the trial court's findings on the rescission issue. Since we have affirmed the trial court's findings on the rescission issue, we need not address the issues raised in Valee's cross-appeal.

Accordingly, for all the reasons set forth above, we affirm the decision of the trial court.

Judgment affirmed.

McNULTY, P.J., and LORENZ, J., concur.